In The
# United States Court of Appeals
For The Eighth Circuit

**CASONDRA POLLREIS, on behalf of herself and her minor children, on behalf of W.Y., on behalf of S.Y.,**

*Plaintiff – Appellant*,

v.

**LAMONT MARZOLF; JOSH KIRMER,**

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
AT FAYETTEVILLE

REPLY BRIEF OF APPELLANT

Anya Bidwell
Keith Neely
Patrick Jaicomo
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320

*Counsel for Appellant*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

REPLY ARGUMENT ..................................................................................... 1

    I.     The clearly established test is about fair warning, not weapon-by-weapon comparisons. ............................................. 3

    II.    There was an underlying constitutional violation. .................... 5

           A.    Officer Marzolf seized Cassi when she submitted to his show of authority. ..................................................... 6

           B.    Officer Marzolf's seizure was unreasonable. ..................... 8

           C.    Excessive force does not require physical injury ............. 10

CONCLUSION ............................................................................................. 12

CERTIFICATE OF COMPLIANCE ............................................................. 14

CERTIFICATE OF SERVICE ....................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bauer v. Norris*,
    713 F.2d 408 (8th Cir. 1983)......................................................*passim*

*Brown v. City of Golden Valley*,
    574 F.3d 491 (8th Cir. 2009) ....................................................*passim*

*Chambers v. Pennycook*,
    641 F.3d 898 (8th Cir. 2011) ............................................................ 11

*Florida v. Bostick*,
    501 U.S. 429 (1991) ..................................................................... 7, 8

*Grider v. Bowling*,
    785 F.3d 1248 (8th Cir. 2015) ..................................................... 10, 11

*Johnson v. Carroll*,
    658 F.3d 819 (8th Cir. 2011) ............................................................ 11

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018) ...................................................................... 4

*McCoy v. Alamu*,
    141 S. Ct. 1364 (2021).................................................................. 5, 6

*Pollreis v. Marzolf*,
    9 F.4th 737 (8th Cir. 2021)................................................................1

*Pollreis v. Marzolf*,
    142 S. Ct. 904 (Jan. 24, 2022) ..........................................................1

*Retz v. Seaton*,
    741 F.3d 913 (8th Cir. 2014)............................................................. 9

*Small v. McCrystal*,
    708 F.3d 997 (8th Cir. 2013) ............................................................... 6

*Taylor v. Riojas*,
    141 S. Ct. 52 (2020) .................................................................... 5, 6

*United States v. Flores-Sandoval*,
    474 F.3d 1142 (8th Cir. 2007) .......................................................... 7

*Wilson v. Lamp*,
    901 F.3d 981 (8th Cir. 2018) ..................................................... *passim*

**CONSTITUTIONAL PROVISION**

U.S. Const. amend. IV ................................................................. 2, 5, 8, 13

**RULE**

8th Cir. R. 28A(i)(2) ............................................................................. 6

# **REPLY ARGUMENT**

Officer Marzolf spends much of his response relitigating aspects of the case that are no longer before this Court.[1] He commits eleven pages of the brief to reciting facts that have nothing to do with the claim at issue here—the drawing of a dangerous weapon on a bystander, Cassi Pollreis, who was neither threatening to Officer Marzolf nor subject to an arrest and who, by Officer Marzolf's own admission, "complied with his request" to stay back, ultimately returning to her house at his command. Resp. Br. 16. Under this Court's precedent, Officer Marzolf's behavior was clearly unconstitutional and cannot be shielded by qualified immunity.

The question in this case is a straightforward one: Did the district court err in concluding that, at the time of Officer Marzolf's conduct, this Court lacked "cases of controlling authority . . . that would have provided a fair and clear warning to Officer Marzolf that his conduct was unlawful." App. 245; R. Doc. 43, at 31 (cleaned up).

By pointing to several such cases in her opening brief, Op. Br. 21–23, Cassi showed that it did. Officer Marzolf distinguishes not one of these cases,

---

[1] Namely whether Officer Marzolf and his supervisor violated the rights of two children who were misidentified by them as fleeing fugitives and held by Officer Marzolf at gunpoint. Those claims were subject to a separate interlocutory appeal, *Pollreis v. Marzolf*, 9 F.4th 737 (8th Cir. 2021). Petition for certiorari was denied. *Pollreis v. Marzolf*, 142 S. Ct. 904 (Jan. 24, 2022).

merely stating that "case law certainly does not establish *beyond debate* that Officer Marzolf violated any clearly established law by pointing his taser at Ms. Pollreis during this incident." Resp. Br. 21. His only authority for this conclusory statement is a decision by a federal district court in Arkansas and a recitation of the lower court's conclusion that "[w]hile the law regarding the threatened use of a firearm has been developed, there ha[ve] been no such developments surrounding the threatened use of tasers." *Id.*

But the lower court erred in making the "fair warning" inquiry turn on the type of a weapon that the officer threatened to use. The focus instead is on whether at the time of the officer's actions, the law of this Court would have made a reasonable officer aware that threatening to use force in the circumstances that do not call for it was unlawful. Op. Br. 20–22. There are indeed such cases in this Court, Op. Br. 21–23, and neither the district court nor Officer Marzolf do anything to distinguish them beyond stating that they are not factually identical to what Cassi alleges. That's not enough to grant qualified immunity.

Neither is it enough to grant qualified immunity on the account that "merely pointing a taser," in Officer Marzolf's words, does not constitute excessive force. Resp. Br. 15–19. In line with this Court's requirements, Cassi demonstrated a deprivation of the Fourth Amendment right by showing (1)

2

that Officer Marzolf seized her when he drew a taser on her and forced her to leave her children under his gun and (2) that this seizure was unreasonable, since she was not a suspect in any crime and did not present a safety threat to Officer Marzolf or others. Op. Br. 10–19. Officer Marzolf's attempt to recharacterize the totality of the circumstances standard by making it turn on the level of injury alleged, Resp. Br. 19, has no support in caselaw and must also be rejected.

The district court's judgment dismissing Cassi's excessive force claim is wrong and must be reversed.

I. **The clearly established test is about fair warning, not weapon-by-weapon comparisons.**

Officer Marzolf argues that qualified immunity shields his actions because in January 2018 it was not clearly established that a threatened use of a taser—as opposed to a threatened use of a firearm—was unconstitutional. Resp. Br. 21.

This position misrepresents the qualified immunity standard, which focuses, in the district court's own words, on whether there are "cases of controlling authority in this jurisdiction at the time of the incident that would have provided a fair and clear warning to Officer Marzolf that his conduct was unlawful." App. 245; R. Doc. 43, at 31 (cleaned up). Fair and clear warning does not mean "that there be a case with materially or

fundamentally similar facts." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009) (cleaned up). And while "general statements of law" can provide "fair and clear warning to the officers," *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018), the caselaw in this Court goes well beyond general statements.

According to *Wilson v. Lamp*, which involved the pursuit of a child-abuse suspect, "the continuous drawing and pointing of weapons constitutes excessive-force" when a suspect is "not threatening and not resisting." 901 F.3d 981, 990 (8th Cir. 2018). According to *Brown v. City of Golden Valley*, which dealt with a noncompliant subject of a traffic stop, the use of a taser is unreasonable when "nonviolent misdemeanants . . . do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." 574 F.3d at 499. And according to *Bauer v. Norris*, even a "relatively minor" force, such as "threateningly rais[ing] a flashlight above" the suspect's head, can constitute the use of excessive force when there is "no evidence that [he] actually *physically* resisted or *physically* threatened" the officers at the time of arrest. 713 F.2d 408, 410, 413 (8th Cir. 1983).

As Cassi explained in her opening brief, these cases would have warned a reasonable officer that drawing a taser on a nonthreatening bystander constitutes excessive force. Op. Br. 19–23. Officer Marzolf does not

distinguish them in his response. Instead, in a sentence almost identical to the one used by the district court, he states only that "[w]hile the law regarding the threatened use of a firearm has been developed, there has been no such developments surrounding the threatened use of tasers." Resp. Br. 21. But a factually identical case is not required to overcome qualified immunity in either this circuit or the U.S. Supreme Court. *See Wilson*, 901 F.3d at 990–91 (using cases that involved the actual use of force to hold that the threatened use of force was also clearly established); *see also McCoy v. Alamu*, 141 S. Ct. 1364, 1364 (2021) (reversing the Fifth Circuit's qualified immunity holding that turned on the type of a weapon used by the prison guard); *Taylor v. Riojas*, 141 S. Ct. 52, 54 n.2 (2020) (rejecting minute distinctions such as the number of days that the prisoner was subjected to grossly unsanitary conditions). The district court's holding to the contrary departed from the law and must be overturned.

## II. There was an underlying constitutional violation.

As *Wilson*, *Brown*, and *Bauer* clearly established, the threatened use of force against a nonthreatening suspect (let alone a bystander) constitutes not only a seizure under the Fourth Amendment, but also an unreasonable

one—i.e. excessive force. Officer Marzolf entirely ignores those cases[2] and, in addition to articulating an improperly narrow view of what provides fair warning for purposes of qualified immunity, articulates an improperly broad view of what represents a reasonable seizure. According to Officer Marzolf: First, even if an individual complies with his show of authority, there is no seizure. Resp. Br. 15–16. Second, unless an individual immediately obeys an officer's verbal commands, the officer is justified in fearing for his safety, making the use of force reasonable. Resp. Br. 17–18. Third, there can be no excessive force in the absence of physical injury. Resp. Br. 19. All three arguments are wrong.

### A. Officer Marzolf seized Cassi when she submitted to his show of authority.

Officer Marzolf does not dispute that when he drew the taser on Cassi and warned her that he would deploy it, he provided her with a show of his authority. Resp. Br. 16. He argues instead that this show of authority did not constitute a seizure because when he initially ordered Cassi to step back, she stepped sideways instead, explaining that the kids he had under his gun were

---

[2] Per this Court's Rule 28A(i)(2), Cassi listed the four most apposite cases to the issue on appeal: *Wilson*, *Brown*, *Bauer*, and *Small v. McCrystal*, 708 F.3d 997 (8th Cir. 2013). Op. Br. 1. Officer Marzolf does not even cite *Wilson*, *Small*, or *Bauer*, and only mentions *Brown* in passing for the proposition that "a threat to an officer's safety can justify the use of force." Resp. Br. 17. Officer Marzolf also fails to address *McCoy* or *Taylor*.

her "boys." Resp. Br. 6, 16; Op. Br. 5. At the same time Officer Marzolf concedes that when he "drew his taser and warned her that he would deploy [it]," Cassi "complied with his request." Resp. Br. 16.

But Cassi's compliance with Officer Marzolf's "request" is precisely what makes the show of authority a seizure. Op. Br. 12–13. Seizure through the show of authority occurs when the officer's conduct causes the submission to this authority by communicating to a reasonable person that she is "not at liberty to ignore the police presence and go about h[er] business." *Florida v. Bostick*, 501 U.S. 429, 437 (1991). To determine whether such seizure occurred, a court must look at the totality of the circumstances, including whether the officer displayed a weapon, engaged in physical touching, or used "language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Flores-Sandoval*, 474 F.3d 1142, 1145 (8th Cir. 2007) (cleaned up).

There is no question that it was Officer Marzolf's threat to use the taser and his language and tone of voice that caused Cassi to comply. When Cassi walked up to Officer Marzolf and told him that the children he held under his gun were her "boys," he yelled at her to "[g]et back!" Op. Br. 5. When Cassi responded— "Are you serious?"—Officer Marzolf pointed the taser at her and said again: "I am serious, get back." *Id*. Cassi had no choice but to leave the

boys at the Officer Marzolf's mercy and obey his command to leave. That is a seizure under the Fourth Amendment. *See Bostick*, 501 U.S. at 439 (describing as a seizure when a reasonable person does not feel at liberty "to decline the officers' requests or otherwise terminate the encounter").

### B. Officer Marzolf's seizure was unreasonable.

Officer Marzolf also argues that any reasonable officer in his shoes would have perceived Cassi, who approached and spoke to him calmly throughout, "as a threat to his safety" and would have drawn a taser on her. Resp. Br. 18. This is belied by the caselaw on objective reasonableness and by the facts of this case, which at the summary judgment stage must be viewed in the light most favorable to Cassi. Op. Br. 10, 14–19.

This Court could not be clearer on what constitutes an excessive use of force: "[T]he test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown*, 574 F.3d at 496. "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Id.* at 499. And even a *threatened* use of force can be unconstitutional, including when the person is "argumentative [and] vituperative" but there is "no evidence that [the person] actually *physically* resisted or *physically* threatened" the officers at the time of arrest. *Bauer*,

8

713 F.2d at 413; *see also Wilson*, 901 F.3d at 990 (stating that since at least 2014 it has been unreasonable to threaten the use of force "against a suspect who was not threatening and not resisting").

Measured against this framework, Officer Marzolf's use of force was undoubtedly unreasonable. Cassi did not flee or actively resist arrest—she was simply a bystander, not suspected of or wanted for any crime. Op. Br. 4. Cassi did not physically threaten Officer Marzolf—she positioned herself several steps away from Officer Marzolf's personal space, made no sudden or threatening movements towards him, and remained exceptionally calm throughout the encounter. Op. Br. 4–6. Cassi attempted to deescalate the situation and prevent it from getting out of hand, by explaining to Officer Marzolf that she was the mother of the two boys held at gunpoint and reassuring the boys, as she was leaving them, that they would be ok. Op. Br. 6–7. Officer Marzolf, on the other hand, failed to utilize de-escalation techniques available to him. He could have used a simple, alternative course of action by explaining to Cassi why he needed to continue restraining the boys. *See Retz v. Seaton*, 741 F.3d 913, 918 (8th Cir. 2014) (explaining that among the *Graham* factors to be considered is the availability of "alternative courses of action available at the time force was used"). Instead, he chose to reach for his taser, while still holding his gun. Op. Br. 6–7.

Officer Marzolf's main argument, it appears, is that Cassi did not *immediately* obey his command to "get back," stepping to the side instead. Resp. Br. 18. But even in circumstances where individuals disobey an officer's commands, which is far from Cassi's actions here, this Court has held that the use of force can be unreasonable. In *Brown*, for example, this Court held that the officer unreasonably tased a passenger of a pulled-over car after she refused the officer's commands to get off the phone and pulled her knees to her chest. 574 F.3d at 494. After all, there was "nothing to indicate that [the officer] was faced with the need to make any split-second decisions" in the face of "a tense, uncertain, and rapidly evolving situation." *Id.* at 497 (cleaned up). Here, Cassi's initial reluctance to abandon her boys falls well within the bounds delineated by this Court.

C. **Excessive force does not require physical injury.**

Officer Marzolf's final argument is that Cassi did not "present[] any evidence of an injury as the result of Officer Marzolf's conduct." Resp. Br. 19. Relying on *Grider v. Bowling*, 785 F.3d 1248, 1252 (8th Cir. 2015), Officer Marzolf contends that "if the suspect does not allege injuries from the officer's acts, then the use of force was not excessive." Resp. Br. 19. But excessive force does not require physical injury and *Grider* does not say that it does. In *Grider,* this Court explained that the degree of injury "is certainly

relevant insofar as it tends to show the amount and type of force used." 785 F.3d at 1252 (citing *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011)). Furthermore, it can be determined that the force is not excessive "in part because the plaintiff 'sustained no injury.'" *Id.* (citing *Johnson v. Carroll*, 658 F.3d 819, 830 (8th Cir. 2011)). That does not mean, however, that the excessive force determination turns on the level of injury alleged. It only means that the injury can be assessed as a part of the totality of the circumstances analysis, along with other factors such as the level of threat presented to the officer, whether the person is a suspect of any crime, and whether this person is resisting a lawful arrest. "The dispositive question," in short, "is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied." *Grider*, 785 F.3d at 1252. And under such analysis, it could turn out that the level of injury could signify that the force was not unreasonable.

In *Grider*, for example, the plaintiff was a suspect in a crime. *Id.* at 1250. He also refused to obey the officer and was wearing a knife on his hip. *Id.* Under these circumstances, the Court determined that pushing him out of his car was not the use of excessive force. *Id.* at 1252. In cases like *Wilson* and *Bauer,* on the other hand, the mere threat of force was determined to be

11

an excessive use of force. That's because in *Wilson*, the officers continued pointing their weapons at the plaintiffs even after they ascertained that the plaintiffs were not the dangerous suspect the officers were looking for. 901 F.3d at 985. And in *Bauer*, the officer threatened to hit a person with a flashlight after accosting him and his wife, asking for their identification, and threating to enter their house. 713 F.2d at 410. In that case the Court stated that even though "the force applied in the instant case was relatively minor," it nonetheless does support a conclusion by the jury that "the use of *any* force by [the officer] . . . was unreasonable." *Id.* at 413. If Officer Marzolf's characterization of the law were correct, both *Wilson* and *Bauer* would have been wrongly decided—a point he avoids addressing by simply ignoring those cases in his brief.

The totality of the circumstances here demonstrates that the use of force by Officer Marzolf was unreasonable. Because Cassi was a bystander, who had committed no crime, presented no threat to Officer Marzolf, and was merely trying to de-escalate a dangerous situation, neither the use of force nor the threat to use force could have been constitutionally reasonable.

## **CONCLUSION**

The district court erred when it concluded that qualified immunity shielded Officer Marzolf from Cassi's excessive force claim. The facts, viewed

in the light most favorable to the plaintiff, demonstrate the deprivation of a Fourth Amendment right to be free from unreasonable seizures. And at the time of the deprivation, it would have been clear to any reasonable officer that his actions would violate that right. The district court's judgment dismissing Cassi's Fourth Amendment claim must be reversed.

Dated: April 6, 2022

Respectfully submitted,

/s/ Anya Bidwell
Anya Bidwell, Lead Counsel
Keith Neely
Patrick Jaicomo
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
abidwell@ij.org
kneely@ij.org
pjaicomo@ij.org

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), I certify that this Reply Brief of Appellant is proportionately spaced and contains 2,980 words, excluding parts of the document exempted by Fed. R. App. P. 32(f).

/s/ Anya Bidwell
Anya Bidwell

# CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2022, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and served via the Court's CM/ECF system upon all counsel of record.

I further certify that the foregoing Reply Brief of Appellant has been scanned for viruses and are virus-free pursuant to Eighth Circuit Rule 28A(h).

/s/ Anya Bidwell  
Anya Bidwell